### IN THE

# COURT OF APPEALS

### OF

# MARYLAND.

---

## DECEMBER TERM, 1829.

### BRUNDIGE, et al. vs. POOR, et ux.

*A feme covert*, in consideration of a creditor of her husband giving him further time to pay his debt, executed a deed jointly with her husband, in form a mortgage, of real estate, to secure its payment. This deed was not acknowledged according to the Acts of Assembly in relation to conveyances of land by feme covert grantors, nor did it purport to be in execution of a power reserved to her, but being for property, in fact held in trust for her separate use, which she had a right to convey as a *feme sole*, was considered in equity as creating a specific lien, and enforced accordingly.

APPEAL from a decree of the Court of Chancery. The bill, which was filed on the 11th of December, 1821, stated that *Dudley Poor, and Deborah, his wife,* of the city of *Baltimore,* being indebted to the complainants, *James Brundige, Thomas Vose,* and *William Worthington,* in a large sum of money ; for the purpose of securing the same, on the 12th day of June, 1819, conveyed to them, by way of mortgage, a lot of ground in the said city, with the buildings, &c. thereon, with a clause of redemption, in case the money thereby intended to be secured, should be paid on the 4th day of October, then next following. That *Dudley Poor* hath become insolvent, that a certain *Matthew McLaughlin* is his permanent trustee, and that no part of the mortgage debt hath been paid. *Prayer,* that the defendants may be decreed to pay complainants debt, with costs, or in

default thereof, that the mortgaged premises may be sold, and for general relief.

The answer of *McLaughlin* admitted that he had been appointed permanent trustee for the benefit of the creditors of *Poor*, and that he had paid no part of complainants debt, principal or interest.

The answers of *Poor* and *wife* admit the execution of the mortgage, as charged and exhibited with the bill; but " by way of plea and answer," they set forth the following facts, as grounds of defence. " They say, that the defendant *Deborah*, as one of the heirs and devisees of *John O'Don- nell*, deceased, was entitled to a large real and personal estate, which, by an order of the Chancery Court, was allotted to her, as will appear by referring to the proceedings on record, which they ask to have taken as a part of their answer. That after the said allotment, the defendants, by a deed, duly executed, &c., and dated on the 4th of August, 1816, conveyed to a certain *Columbus O'Donnell* and *John H. Poor*, all their estate and interest in the share aforesaid, in trust, for the sole and separate use, benefit and behoof of the said *Deborah*, for life, so that she be suffered to take and receive the entire profits thereof to her own separate use, without being subject to the control of the said *Dudley Poor*, or of any future husband of the said *Deborah*, and in nowise answerable for the payment of his or their debts or engagements; and subject to be sold and conveyed by the said *Deborah* absolutely, in such manner as she may think proper, without the concurrence of her present, or any future husband; and after the death of the said *Deborah*, then as to the whole of said property, or such parts thereof as may then be undisposed of, by her deed or contract, in trust for her children as tenants in common; and in case she should die without children, for the use of such person or persons as she, by a writing in the nature of a will, may appoint, and in default of such appointment, to the right heirs of the said *Deborah*. And they further say, that the real estate mentioned in the mortgage, is included in the said

trust deed—and by way of *plea*, and in bar of the complainants right to recover, they say they are advised they had no legal right to make said deed, and that no legal interest was thereby conveyed to the complainants, the legal title being outstanding in the said trustees, *Columbus O'Donnell* and *John H. Poor;* and moreover, that the said deed of mortgage is defectively executed, and even if a legal or equitable title existed in these defendants, that the said deed exhibited by the complainants, with their bill, is wholly defective in its execution, and agreeably to the laws of *Maryland* conveys no legal or equitable title to the complainants," &c.

Leave was afterwards prayed for, and granted, to amend the bill, by making the said trustees, *Columbus O'Donnell* and *John H. Poor,* defendants, against whom, together with the other defendants, the same relief was prayed as by the original bill.

The answers of the defendants to the amended bill, admitted the execution of the deed of trust, &c.

The original mortgage to the complainants was filed as an exhibit with the bill. The clause of redemption is, " that if the said *Dudley Poor* and *Deborah Poor*, his wife, their heirs, &c. shall pay to the said *James Brundige,* &c. the sum of $2059 75, on or before, &c., then this indenture shall cease," &c. It was acknowledged by the grantors on the day of its date, before two justices of the peace, without a privy examination of the wife being certified on the mortgage.

The general replication to the answers was entered by the complainants.

A commission issued by consent to take testimony, but the proof returned does not appear to be material.

The complainants again, on the 14th of October, 1825, amended their bill, charging that the amount intended to be secured by the mortgage from *Poor and wife* to them, is a specific lien on the property therein mentioned, by reason of the said mortgage deed so executed as aforesaid,

and praying that the same may be sold for the purpose of discharging the said lien.

The answer of *Poor and wife* to this amended bill, admits the mortgage; but they state, by way of *plea and answer* thereto, all the grounds of defence set forth in their answer to the original bill; and they further say, that previous to the year 1819, the said *Dudley Poor*, as the security of a certain *Moses Poor* and *Jonas Hastings*, became indebted to the complainants, as the agents of one *John Tappan*, in the amount mentioned in the mortgage, and that the same was executed by them in consideration of the said complainants (on behalf of the said *Tappan's*) agreement to extend the time of payment of the money due them, as aforesaid, from the said *Dudley*. And they aver, that the said debt was the debt of the said *Dudley Poor*, and that the said *Deborah* did not derive any benefit, or receive any consideration therefor. And they alleged in bar of the complainants bill, that they had no legal right to make said deed of mortgage; and if they had, that the same is defectively executed, &c.

On the 13th day of November, 1826, after the coming in of the preceding answer, the complainants again, with leave, amended their bill, so as to make *John Tappan* a party complainant. In this bill, *Tappan* is stated to be the actual creditor, and re-asserting the existence of a specific lien on the property contained in the mortgage for the aforesaid debt, they pray for a sale of it, and for general relief. And at the same time the following agreement, signed by the solicitors of the parties, was filed: "The undersigned, solicitors for the parties in the above cause, do hereby agree, that *John Tappan* shall be deemed and taken as a party complainant, in the original and amended bills of complaint filed in this cause, in the same manner, to all intents and purposes, as if the said *John Tappan* had been inserted as a complainant in the same, at the time the said bills were filed and exhibited in this Court. It is further agreed, that the depositions, proofs, and proceedings heretofore had, shall be read in evidence in this cause in the same manner

as if the same had been taken after the filing of the answers in the said cause, and issue had been joined thereon. It is further agreed, that the said complainants shall have leave to file their amended bill, making the said *John Tappan* party complainant, and that the answers heretofore filed, shall be taken as answers to the said amended bill, and the depositions, proofs and proceedings heretofore had, shall be read in evidence in this cause, in the same manner as if the same had been taken, filed, and entered, after the filing of the said amended bill, and issue joined thereon."

BLAND, Chancellor, (September, 1826.)

The original bill, filed on the 11th of December, 1821, alleges that *Dudley Poor* and his *wife*, on the 12th of June, 1819, mortgaged certain property to the plaintiffs, to secure to them the payment of the sum of $2057 57, on the 4th of October then next. And it also alleges, that *Dudley Poor* applied for and obtained the benefit of the insolvent laws, and that *Matthew McLaughlin* was appointed his trustee. On the 9th of December, 1823, the plaintiffs having obtained leave, amended their bill, by which amended bill they allege that *Dudley Poor* and *wife* have conveyed the mortgaged property to *Columbus O'Donnell*, and *John H. Poor*, in trust for the use and benefit of *Dudley Poor's wife*, of the nature of which they were ignorant; and therefore pray that those trustees may be made defendants, and that they may be ordered to produce the deed of trust.

These complainants, still not being entirely satisfied with their bill, obtained leave, and again amended it on the 14th of October, 1825. By this amendment they allege, that they are entitled to be paid out of the sale of the mortaged property, on which they have a specific lien, by reason of the mortgage deed; and, in the opinion of the plaintiffs, their bill still requiring amendment, on the 13th of November, 1826, they obtained leave, and so amended it as to make *John Tappan* a plaintiff, who, as is alleged by this amendment, is, in truth, the real creditor, and that *Brundige, Vose,*

and *Worthington*, in whose names the mortgage had been taken, were merely his agents.

The plaintiffs pray for a sale of the mortgaged property to pay the debt, and for general relief.

To the original bill, on the 13th of March, 1822, *Mc-Laughlin*, the trustee, under the insolvent laws, of *Dudley Poor*, answered and admitted all its allegations.  On the 16th of December, 1822, *Dudley Poor* and *wife*, jointly pleaded in bar, that the mortgaged property had been previously conveyed to *Columbus O'Donnell*, and *John H. Poor*, in trust for the uses specified in the deed of trust, and therefore that the mortgage relied on by the plaintiffs, was insufficient and void.  On the 3d of August, 1824, *O'Donnell* and *John H. Poor*, by their joint answer, admit the execution of the deed of trust, and produce it as required by the first amended bill.  After the amendments of the bill of the 9th of December, 1823, and of the 4th of October, 1825, *Dudley Poor* and *wife* again jointly pleaded, that they had, by a deed bearing date on the 4th of August, 1826, conveyed certain property therein described, including that in the proceedings mentioned to *Columbus O'Donnell*, and *John H. Poor*, in trust for the separate use of *Dudley's wife*, and for the uses mentioned in that deed; and then aver, and plead, that the mortgage deed for a part of the property which had been so conveyed in trust, is defectively executed, and that they had no legal right or power at that time to make such a contract, for that property.  After which it was agreed that these answers, should stand as answers to the third amendment of the 13th of November, 1826.  The general replication has been filed, issue joined, and the case standing ready for hearing, has been fully argued.  The deed of trust of the 4th of August, 1816, was produced, commented upon, and its execution and verity on all hands entirely admitted.  I have thus particularly stated the circumstances of this case, because the statement itself leads us directly to those well established principles upon which it may be at once disposed

of, without the least difficulty, and without being carried away into that group of decisions in relation to the execution of a power reserved to a *feme covert*, that have tasked the diligence, and exercised the ingenuity of so many distinguished lawyers; since there is no allegation in these pleadings, by which the court can be called upon to treat the mortgage, upon which the plaintiffs sue, as an execution of the powers with which the wife of *Dudley Poor* has been clothed by the deed of trust. The case is simply this: the plaintiffs say, that to secure a debt due them, they obtained a mortgage of certain property from *Dudley Poor* and *wife*, which property they pray may be sold to pay that debt. To this *Dudley Poor* and *wife* plead in bar, that they had no legal right or power to make such a mortgage, for the reasons set forth. To this the plaintiffs have replied, generally, and issue has been joined, and the case set down for hearing. Where the defendant files a plea in bar, if the plaintiff conceives it to be defective in form and substance, and is anxious to have that matter determined, he may set the plea down for hearing, and take the judgment of the court upon it. But if the plaintiff allows the plea to be correct, or it is so determined to be by the court, he may then reply and join issue upon the truth of the facts therein set forth; and if, upon the hearing, the defendant establishes the truth of the facts thus put in issue, the suit is at an end, so far as the plea extends. It is too late, after issue joined, to inquire into the formality of the plea, or whether it be in any respect defective in form: or whether any, and how far an answer might be necessary to its support, because the plaintiff, by replying to it, has thereby tacitly waived all objections of that sort, and admitted it to be a good bar in equity, if the facts be true. And it is the constant course of the court where issue has been joined on the plea, and its truth is proved or admitted, to dismiss the bill with costs, if the plea goes to the whole. In this case, the plea of *Dudley Poor* and *wife* covers the whole and entire substance and merits of the plaintiff's case, and

having been admitted by the replication to be good in point of equity, and the truth of the facts therein set forth having been established, there is an end of the plaintiff's case.

DECREED, that the complainants bill of complaint be dismissed, with costs.

From which decree the complainants appealed to this court.

The cause was argued before BUCHANAN, Ch. J., EARLE, MARTIN and ARCHER, J.

*Moale,* for the appellants, contended, 1. That the deed or instrument of writing dated June 12th, 1819, from *Poor* and *wife,* to *Brundige, Vose* and *Worthington,* created a lien in equity on the property therein mentioned, and the complainants have a specific lien thereon, to the amount of the sum of money mentioned in said deed, and intended to be secured thereby. 2. That the deed of trust executed by *Poor* and *wife,* on the 24th of August, 1816, to *Columbus O'Donnell and John H. Poor,* grants to *Deborah Poor* full power to contract for, and dispose of, the said property, and by the trusts mentioned therein there is reserved to the said *Deborah* the power of disposition thereof. 3. The answer and plea filed by the said *Poor* and *wife,* do not bar the complainants from the relief sought by them. 4. The Chancellor, in dismissing the complainants bill, erred in not dismissing the same without prejudice.

He cited in his argument, *Beames Eq. Plea.* 339, 240. *Harr. Ch. Pr.* 599. *Mitf.* 238. *Beames Eq. Plea.* 41. *Mitf.* 177, 239. *Chase vs. M'Donald and Ridgely,* 7 *Harr. and Johns.* 176, 198. *Price and Nisbet vs. Bigham, Ib.* 298. 3 *Johns. Ch. Rep.* 77. *Jacques vs. Trustees of the Methodist Church,* 17 *Johns. Rep.* 548. *Woods vs. Fulton and Starck,* 4 *Harr. and Johns.* 329. *Smith and others, vs. Everett and others,* 4 *Bro. Ch. Rep.* 64. *Ex parte Wills,* 1 *Ves. Jr.* 162. *Legard and Hodges, Ib.* 477.

*Winchester,* for the appellees. 1. This is a bill to foreclose a mortgage, and nothing else; the original and amended bills have all this character, and the appellants now ask for relief, not warranted by the bill. Under the general prayer, they are only entitled to such relief as is consistent with their bill. The object of the bill, then, being to obtain a sale of mortgaged property, and its specific prayer looking alone to that object, they cannot now be allowed to ask for the execution of a contract, defectively executed. A bill made for one purpose, cannot be applied to another. *Chalmers vs. Chambers,* 6 *Harr. and Johns.* 29. 2. The deed of trust from *Poor* and *wife,* to *O'Donnell* and *John H. Poor,* was founded upon a meritorious consideration; and the complainants can have no equity as strong as that of the wife. The whole question, then, is on the validity of the mortgage, which he contended was void at common law, and under the act of Assembly, and that it was not an execution of the power under the deed of trust. The mortgage was void under the act of Assembly, because the wife was not examined privately, and apart from her husband. It is no execution of the power reserved to her by the trust deed. It does not refer to that deed, or manifest an intention to execute the powers with which it clothes her. Such powers must be strictly executed, especially in the absence of a valuable consideration. 1 *Madd. Ch.* 44, 45. *Colier vs. Layer,* 2 *P. Wm.* 623, 624. 1 *Scho. and Lef.* 62, 63.

This is not such a defective execution of the power, as a court of equity will aid. It was, at most, a voluntary assignment, without consideration, and there is nothing *on the face* of the instrument indicative of an intention to execute the power. 3. The appellees are concluded by the plea, the legal sufficiency of which, they have admitted by the replication. *Chase vs. McDonald & Ridgely,* 7 *Harr. and Johns.* 181.

*Taney,* Attorney General, on the same side.

1. The legal sufficiency of the plea being admitted by the replication, and the facts being established, the plaintiff's bill must be dismissed. *Mitf. Plea.* 241. *Chase vs. McDonald & Ridgely,* 7 *Harr. and Johns.* 198.

2. The bill claims relief, not on the ground of a separate estate of the wife, but upon a mortgage executed by husband and wife, for a debt due from husband and wife; without reference to any separate estate of the wife, or any power to mortgage by virtue of the deed of trust. In order to obtain relief on such a bill, he must show a mortgage of a legal or equitable estate, executed according to the act of Assembly, so as to bar the right of a *feme covert.* He cannot support the case he has stated, by shewing the execution of a power by the wife, or a contract to mortgage her separate estate, by virtue of a trust for her separate benefit; for either of them would be a different ground of relief, and a different equity, from the one he has stated.

The mortgage is not properly acknowledged to bind a *feme covert,* nor would it bind her, being a *feme covert,* as a contract to mortgage, independent of her separate interest under the deed of trust—and as that interest is not alleged in the bill, and her interest under the deed of trust is not stated as a ground of relief, the case charged in the bill, fails in the proof, and the bill must be dismissed.

3. If, under the statement in the bill, the deed of mortgage can be relied on, as the contract of a married woman to mortgage her separate estate, and as thereby creating, by her contract, a specific lien on her property, it ought to have been so charged in the bill; and the deed of trust, giving her the power, should have been set forth, and the consideration for the contract stated, so as to shew the equity of the complainants to claim the execution of the agreement to encumber, against *Mrs. Poor.* *Chalmers vs. Chambers,* 6 *Harr. and Johns.* 29. *Coop. Eq. Plea,* 13, 14.

In the case of *Price and Nisbet vs. Bigham,* 7 *Harr. and Johns.* 296, the contract to charge the land with the debt was

set out, and the consideration for the agreement fully stated, and the contract and consideration proved, as stated in the bill. In this case, nothing is charged but the mortgage, and the specific lien is alleged to arise by reason of the mortgage, and no other contract but a mortgage is stated; and the equitable consideration of a joint debt from husband and wife, charged in the bill, is not proved.

4. If the facts were all proved, there is no equity upon which the complainants can claim a specific execution; it was the separate debt of the husband, and due from him as security.

5. The instrument called a mortgage, does not profess to be the execution of the power reserved in the deed of trust; and does not appear, and is not alleged to have been so intended.

*Williams,* (District Attorney of U. S.) in reply.

The relief we ask, is conformable to the case made by the bill. Our prayer is, that the specific property may be sold, and the case made by the bill is such, as to justify this prayer. The instrument of writing which furnishes the foundation of the complainants bill, though called a mortgage, is but an equitable contract. The case in 6 *Harr. and Johns.* 29, relied on, on the other side, is not analagous to this; there, the prayer of the bill was to have the deed recorded, and the decree ordered a sale of the property. The relief granted was entirely different from the case stated in the bill, and from the relief prayed. This bill has a double aspect; it asks that the mortgage may be considered a specific lien, and also for a sale of the property.

Whether the defence set up, be a plea or answer, the doctrine asserted by the Chancellor is not law in this State. *Chase vs. McDonald & Ridgely,* 7 *Harr. and Johns.* 170, 176, 178, 181, 197, 198. It is, however, no plea, possesses none of the forms or features of a plea, either in its commencement or conclusion. *Beames Eq. Pleas,* 332 to 349, 40, 42, 44, 48, 49. *Mitf.* 300, (*Ed.* 1827,) 299, 219, 294,

300.    *Ham. Dig.* 427.    *Coop. Plea,* 223, &c., 229, 231.    *Ferguson vs. O'Hara,* 1 *Peters Cir. Court Rep.* 493. *Saltus and Saltus vs. Tobias and Seaman,* 7 *Johns. Ch. Rep.* 214.

If the defence was originally a plea, the agreement signed by the counsel deprives it of that character; for that agreement expressly says, it shall be taken as an answer.

The mortgage deed is not merely voluntary, as is alleged on the other side; it was made for a valuable consideration. That married women can transfer their separate estate, he referred to 3 *Johns. Ch. Rep.* 129, 144. *Price and Nisbet vs. Bigham,* 7 *Harr. and Johns.* 296. 3 *Johns. C. Rep.* 77, 7 *Harr. and Johns.* 296.

The deed is good as a mortgage of an equitable estate, and was properly executed; the trust deed rendering a private examination unnecessary. 3 *Johns. Ch. Rep.* 77, 89. *Jacques vs. Methodist Church,* 17 *Johns. Rep.* 577. 17 *Johns. Rep.* 577. But if the deed is defective, a court of equity, under the circumstances of this case, has the power, and will cure the defect. *Methodist Church vs. Jacques,* 1 *Johns. Ch. Rep.* 75. 1 *Madd. Ch.* 44, 45. *Hunt vs. Rousmaniere,* 1 *Peters Rep.* 13.

ARCHER, J. delivered the opinion of the Court.

The decision in *Tiernan vs. Poor and wife,* at the last term of this Court, has settled the principal questions upon which this cause must turn.

From the doctrines there maintained, *Mrs. Poor* possessed a right to encumber her property by deed, or contract, provided the same should be founded on a sufficient consideration.

It was further decided, that although the paper, purporting to be a mortgage, and which was the foundation of the suit, was not acknowledged according to the provisions of the acts of Assembly, whatever might be the effects of such omission, in taking from the instrument the character, technically speaking, of a mortgage, yet that equity would treat

it as a mortgage, so far as to authorise a Court of Chancery to decree a sale of the property, covered by it, for the payment of the debt it was executed to secure.

Taking the facts stated in the bill as true, there would be a sufficient consideration upon which to ground the complainant's bill; for that avers, that the defendant being indebted, executed the mortgage.

Admit the facts in the answer to be true, and a sufficient consideration is also manifested. There it is stated, that the mortgage was executed by *Poor and wife*, to secure to *Tappan*, one of the complainants, a debt which *Poor* owed him, and that it was made in consequence of *Tappan's* agreeing to extend the time of the payment of *Poor's* debt. *Tappan's* agreement to extend the payment, in consideration of the receipt of the mortgage, furnished a sufficient consideration to sustain the complainant's equity.

All the material allegations of the bill are admitted by the answer. In addition to a sufficient consideration as above stated, it is admitted that the instrument was executed. With these admissions, the instrument becomes, in the language of the bill, a specific lien on the property it covers.

There is, however, one fact averred in the bill, which is not admitted in the answer,—the joint indebtedness of the husband and wife; but that cannot be material, because the equity of the complainant is the same, whether the allegation that they were jointly indebted, be true or not. The real and only controversy is this: does there exist a specific lien on the property? and that the lien exists, whether they were jointly indebted, or whether *Poor* was indebted, and they jointly executed the instrument in consideration of forbearance.

It is not necessary to express any opinion as to the effect of replying to a plea, because we do not consider there is any plea filed in the cause. The paper filed by the defendant, which he indiscriminately calls a plea, and an answer, we consider as nothing more than an answer; and it is perfectly apparent from the proceedings in the cause, and from

the agreement of counsel, which constitutes a part of the cause, that it was so considered and treated by them.

The decree of the Chancellor is REVERSED, and the cause remanded to the Court of Chancery, that a sale of the property may be there decreed, to satisfy the debt of the complainants.

DECREE REVERSED.